# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF IOWA

In the Matter of:

Todd A. Rodruck,                                    Case No. 07-01872-lmj7

               Debtor                         Chapter 7

Kathleen Lobdell,                                   Adv. Pro. 07-30134-als

               Plaintiff

     v.

Todd A. Rodruck,

               Defendant

## MEMORANDUM OF DECISION
**(date entered on docket: April 28, 2010)**

Trial was conducted on the Plaintiff's complaint to determine the dischargeability of debt pursuant to 11 U.S.C. section 523(a)(2)(A) and section 523(a)(6) on February 4-5, 2010. Steven J. Havercamp appeared for the Plaintiff, Kathleen Lobdell ("Lobdell"). The Defendant, Todd A. Rodruck ("Rodruck") was represented by Steven A. Berger. At the conclusion of trial a briefing deadline was established. The matter is now considered fully submitted.

The court has jurisdiction of these matters pursuant to 28 U.S.C. sections 157(b)(1) and 1334. Upon review of the pleadings, evidence, briefs and arguments of counsel, the following findings and conclusions of law are entered by the Court pursuant to Federal Rules of Bankruptcy Procedure 7052 and 9014.

FACTS

In 2004 Lobdell began looking at real estate in Iowa and Illinois that overlooked the Mississippi River to make a site selection for building a new home. She located a lot with a panoramic view described as Lot 3 in River Highland 2nd Addition to the City of LeClaire, Iowa ("House"). She spoke with a realtor and was informed that only certain builders were authorized to construct within the development. The realtor provided the names of three builders to Lobdell, and told her that Rodruck was the best. Rodruck Builders, Inc. ("Corporation") is a small, closely-held corporation formed in 1999 with Rodruck as its sole shareholder and director. This entity was engaged in the business of building both speculative and custom homes.

Rodruck told Lobdell that he would build her a house of highest quality within her price range, and that construction would be completed within six months. Lobdell informed Rodruck that she wanted no problems after she moved into the House. The Plaintiff states that Rodruck promised he would deliver the House without mechanics liens attached and that he would fix anything that was a problem. The record does not include any information about other contractors considered or interviewed by the Plaintiff. Presumably, based upon this lack of evidence, the Plaintiff did not consider other contractors to build the House.

The contract identifies the Corporation and is executed by both parties. It includes a listing of items to be included in the House, allowances and an option elected for a finished basement. The document is not dated and is silent as to a time-frame for completion of construction. In addition to the contract, the parties signed a list of vendors and allowances for use in selecting items to be installed in the House. The

House was based upon a standardized set of blueprints.  During construction, handwritten addendums were prepared for additional items that deviated from the original contract and exceeded the allowances allocated.  Revisions to the standardized blueprint were also made pursuant to Lobdell's request.

On August 8, 2005, during the Plaintiff's move to Iowa, the Defendant informed her that the House would not be ready for occupancy for a couple of more weeks.  From this point forward the relationship between the parties deteriorated.  The Defendant attempted to address the concerns of the Plaintiff pursuant to the contract and finish the House to her satisfaction up until late September 2005.  About this same time, Rodruck admits he was beginning to experience financial issues with his business.  Closing on the House occurred on October 25, 2010.[1]  The settlement statement prepared on a standardized HUD-1 form set forth the items assessed to each party.  At various times, prior to and after closing, Lobdell contacted a number of entities to bid and correct issues she alleges were the result of poor workmanship by Rodruck, including grading, landscaping, retaining walls, utility work, concrete work, finish work and carpentry.  A damage spreadsheet was prepared that itemized damages in the amount of $88,648[2].

## DISCUSSION

### 11 U.S.C. section 523(a)(2)(A)

The Plaintiff seeks to have her damages excepted from Debtor's discharge pursuant to 11 U.S.C. section 523(a)(2)(A) which provides that:

> A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt . . . for

---

[1] An earlier closing had been scheduled for September 28, 2010 but did not proceed due to Seller's lack of funds.
[2] The amount of $69,068 reflects the cost for repairs, including an estimate of $35,000 to replace the geothermal system.   Other damages account for the balance of $19,580.

> money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by – false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

11 U.S.C. § 523(a)(2)(A) (2007). To successfully except a debt from discharge under this section requires a showing of actual fraud by either direct or circumstantial evidence. See Lipka v. Donley (In re Donley), 115 B.R. 502, 503 (Bankr. E.D. Pa. 1990).

The creditor bears the burden of proof on the following elements by a preponderance of the evidence:

> 1) that the debtor made a representation; 2) that at the time the debtor knew the representation was false; 3) that the debtor made the representation deliberately and intentionally with the intention and purpose of deceiving the creditor; 4) that the creditor justifiably relied on such representation; and 5) that the creditor sustained the alleged loss and damage as the proximate result of the representation having been made.

Merchs. Nat'l Bank v. Moen (In re Moen), 238 B.R. 785, 790 (B.A.P. 8th Cir. 1999) (citations omitted). See also Marcusen v. Glen (In re Glen), No. 09-6029, 2010 Bankr. LEXIS 933 at *9 (B.A.P. 8th Cir. 2010). Dischargeability actions are narrowly construed against the creditor and in favor of the debtor. See In re Donley, 115 B.R. at 503 (citing Koltman v. Hammill (In re Hammill), 61 B.R. 555 (Bankr. E.D. Pa. 1986)).

Lobdell asserts that Rodruck promised, and failed, to deliver a home of the highest quality and workmanship which resulted in the additional costs she incurred to make repairs and to complete work that remained unfinished. The primary issue in this case involves a determination of whether the Debtor's conduct constitutes actual fraud or whether the Plaintiff's claims actually arise under a breach of contract. Failure to fulfill contract terms does not automatically result in a finding of fraudulent conduct. See

Starling v. Valmac Indus., Inc., 589 F.2d 382, 387 (8th Cir. 1979); Alvine v. Keller (In re Keller), 72 B.R. 599, 602 (Bankr. M.D. Fla. 1987).  "[S]ubsequent conduct contrary to [an] original representation does not necessarily render the original representation a falsity."  Garza v. Baker (In re Baker), 139 B.R. 692, 694 (Bankr. N.D. Ohio 1992).

Various courts have found that debts arising from faulty construction arise under a breach of contract theory and are not excepted from discharge for fraud under facts and arguments similar to those asserted by Lobdell.  See, e.g., Bohannon v. Horton (In re Horton), 372 B.R. 349 (Bankr. W.D. Ky. 2007); Leger v. Semora (In re Semora), 204 B.R. 26 (Bankr. E.D. Ark. 1996); Rezin v. Barr (In re Barr), 194 B.R. 1009 (Bankr. N.D. Ill. 1996); In re Donley, 115 B.R. 502; In re Keller, 72 B.R. 599; Taylor v. Kaufmann (In re Kaufmann), 57 B.R. 644 (Bankr. E.D. Wis. 1986).  Other courts have held that damages arising from improper construction are not discharged when specific representations are made with no ability, or intention, to perform.  See, e.g., Vinson v. Cozart (In re Cozart), 417 B.R. 116 (Bankr. W.D. Ark. 2009); Kadlecek v. Ferguson (In re Ferguson), 222 B.R. 576 (Bankr. N.D. Ill. 1998).

"[T]o be actionable as fraud, the plaintiff must establish that the debtor entered into the contract with the intent of never complying with its terms."  First Baptist Church v. Maurer (In re Maurer), 112 B.R. 710, 713 (Bankr. E.D. Pa. 1990) (citing Seepes v. Schwartz (In re Schwartz), 45 B.R. 354 (S.D. N.Y. 1985)).  No information has been provided which would indicate that Rodruck did not intend to fulfill the terms of the contract and perform the general representations made related to the construction of the House, at the time they were made.  The Debtor testified that he attempted to resolve the complaints raised by the Plaintiff, but eventually could not, and did not, fix all of the

items identified by Lobdell. The reasons for this failure include issues with subcontractors, cost overruns, exhausted allowances, lack of funds and a difference of opinion as to the expected results. The damages claimed by the Plaintiff for repairs result from a breach of contract, not fraud.[3]

The HUD-1 Uniform Settlement Statements admitted at trial indicate that funds were escrowed for finish work. There were numerous revisions from the HUD-1 Statement dated September 28, 2005 and the HUD-1 apparently drafted for the final closing which occurred on October 25, 2005. One such revision alters the amounts at lines 516 and 517 related to escrowed funds. At the time of trial, the parties were uncertain as to the status or amount of these funds. The Plaintiff is entitled to assert a claim and recover any existing escrowed funds from the lender or closing agent.

The Plaintiff also argues that the Defendant enticed her to execute the Contract based upon his failure to provide information regarding the financial stability and resources of the Corporation. She states that had this information been provided she would have declined to hire the Defendant to build the House. There are two deficiencies in this argument which prevent a finding of fraud: 1) the Plaintiff did not inquire or investigate as to the finances of the Corporation; and 2) there is no evidence in the record that at the time the contract was executed that the Corporation was experiencing financial difficulties that would have prevented the construction of the House in the manner represented.

It is well settled that "an individual may affirmatively assume personal liability for a corporate debt" by guarantee of payment. 18 C.J.S. Corporations § 512 (2009).

---

[3] Due to this finding the Court does not reach the issues raised by Plaintiff related to tort liability or piercing the corporate veil.

Todd Rodruck executed a handwritten note dated August 31, 2005. The document promises payment for storage and redelivery charges. A second handwritten note dated September 27, 2005, only a few days prior to the first scheduled closing, was executed by Todd Rodruck and Rodruck Builders, Inc. This second writing appears to again promise reimbursement for storage expenses and adds a promise for reimbursement of one-half of loan fees totaling $1348.50 and the amount of $130. The total of these items as set forth on the itemized damage spreadsheet is $10,124. Rodruck admits that he agreed on different occasions to pay these amounts, although the evidence is inconsistent as to whether he meant this to apply to him, personally, or his Corporation. Based upon the evidence, and because both a business and personal signature appear on the writings, a personal guarantee by Rodruck to pay those amounts is indicated. See Builders Kitchen and Supply Co. v. Moyer, 776 N.W.2d 112, 2009 WL 2951295 (Iowa App. 2009).

At the time Defendant signed the writings, he concedes that his company was facing a financial decline and that he signed the writings in order to placate the Plaintiff. Rodruck's ability to personally pay the amounts was closely tied to, if not entirely dependent upon, the financial condition of the Corporation. Based upon the testimony, the Court concludes that Rodruck could not, and did not, intend to fulfill these obligations when he signed the documents. The Court also finds that under these circumstances, Lobdell's reliance on Rodruck's representations was justifiable and that Lobdell sustained the loss as the proximate result of Rodruck's representations. The Plaintiff has established by a preponderance of the evidence the discharge exception pursuant to 11 U.S.C. section 523(a)(2)(A) for the amount of $10,124 against the Defendant.

**11 U.S.C. section 523(a)(6)**

The Plaintiff alleges an exception to discharge pursuant to 11 U.S.C. section 523(a)(6) which provides:

> (a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt –
> . . .
> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

11 U.S.C. § 523(a)(6) (2007).

The United States Supreme Court resolved a split in the circuits related to the necessary action required to have a debt considered non-dischargeable due to willful and malicious conduct. The Court held that reckless or negligent conduct that results in injury does not meet the standard required under 11 U.S.C. section 523(a)(6). See Kawaauhau v. Geiger, 523 U.S. 57 (1998). The statute requires two distinct elements. "Willfulness is defined as 'headstrong and knowing' conduct and 'malicious' as conduct 'targeted at the creditor . . . at least in the sense that the conduct is certain or almost certain to cause . . . harm.'" Fischer v. Scarborough (In re Scarborough), 171 F.3d 638, 641 (8th Cir. 1999) (quoting Johnson v. Miera (In re Miera), 926 F.2d 741, 743-33 (8th Cir. 1991)). To identify malicious behavior for purposes of the statute, there must be actions that are more than reckless or intentional acts that result in harm. See id. The Eighth Circuit further clarified its interpretation of "willfulness" and stated, "in this circuit the 'willful' element is a subjective one, requiring proof that the debtor desired to bring about the injury or was, in fact, substantially certain that his conduct would result in the injury that occurred." Blocker v. Patch (In re Patch), 526 F.3d 1176, 1180-81 (8th Cir. 2008).

There is no evidence to support a finding that the actions of the Debtor were willful and malicious which would except any of the claims asserted by the Plaintiff from discharge pursuant to 11 U.S.C. section 523(a)(6).

Based upon the foregoing it is hereby ordered that:

1. The amount of $10,124 is excepted from discharged pursuant to 11 U.S.C. section 523(a)(2)(A) and judgment will enter accordingly.

2. All remaining amounts claimed by the Plaintiff are discharged pursuant to 11 U.S.C. section 727.

3. The Plaintiff is entitled to assert a claim for any funds that continue to be held in escrow by the lender or closing agent as set forth in the HUD-1 Uniform Settlement Statement.

 /s/ Anita L. Shodeen 
Anita L. Shodeen
U.S. Bankruptcy Judge

Parties receiving this Memorandum of Decision from the Clerk of Court:
Electronic Filers in this Adversary Proceeding